UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:15-CR-24-GFVT-HAI |
| ) | |
| v. ) | |
| ) | |
| JAMES TRAVIS CARNES, ) | RECOMMENDED DISPOSITION |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove, the Court considers reported violations of supervised release conditions by James Travis Carnes. D.E. 56 at 2. District Judge Van Tatenhove entered a judgment against Defendant on June 30, 2016, on one count of being a felon in possession of a firearm. D.E. 50 at 1. Defendant was sentenced to eighty-four months of imprisonment followed by three years of supervised release. *Id*. at 2-3. On November 4, 2021, Defendant was released from custody to begin his term of supervision.

**I.**

On March 2, 2022, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report,

> On February 28, 2022, this officer conducted a home visit at Carnes' reported address. Upon arrival, Carnes was located in the driver's seat of a running vehicle. This officer instructed Carnes to exit the vehicle and upon doing so, the cap to a syringe and a cotton pad fell onto the ground. Upon questioning, Carnes admitted he began using methamphetamine intravenously approximately five days prior and had used as recently as the prior day. He also expressed the desire to harm himself using a knife. Additional cotton pads and a box cutter style knife were located next to the driver's seat. When questioned as to whether there

1

were any drugs in the vehicle, Carnes advised there may be a residual amount left. Law enforcement was called for assistance and it was decided Carnes would be transported to the Baptist Regional's Trillium Center, in Corbin, Kentucky, for detoxification and to assist with stabilizing his mental health.

The Report charges three violations based on this conduct. Violation #1 alleges that Defendant violated the condition prohibiting him from unlawfully using a controlled substance. This is a Grade C violation. Violation #2 alleges that Defendant violated the condition requiring him to not commit another state, federal, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's methamphetamine possession, on account of his prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a). Violation #3 alleges that Defendant violated the condition prohibiting him from possessing drug paraphernalia. This is a Grade C violation.

The Court conducted an initial appearance pursuant to Federal Rule of Criminal Procedure 32.1 on March 24, 2022. D.E. 60. Defendant entered a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. *Id.* At that time, the United States made an oral motion for detention; Defendant requested release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the Court found detention was required. *Id.*

The Court initially scheduled the final hearing for April 11, 2022. At the outset, the parties orally moved to continue the hearing to allow defense counsel to determine whether arrangements could be made regarding Defendant's upcoming medical appointment. *See* D.E. 62. Defense counsel proposed that Barbara Carnes, Defendant's mother, could act as a third-party custodian and transport him to the medical appointment. The Court and the government questioned Ms. Carnes, and the Court continued the final hearing until April 12, 2022. *Id.*

At the final hearing on April 12, 2022, defense counsel informed the Court that Defendant's medical appointment had been modified to occur via video. Thus, the third-party custodian issue was moot. Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 65. Defendant waived a formal hearing and stipulated to the violations set forth in the Report. *Id.* The Court found Defendant to be competent to stipulate to the violations and that the stipulation was knowingly, voluntarily, and intelligently made. *Id.* The Court also found the stipulation to be consistent with the advice of Defendant's counsel. *Id.*

Of course, the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Defendant's stipulation permits the Court to find that he engaged in conduct that is a Grade B violation under the Guidelines. *See* U.S.S.G. § 7B1.1(a)(2).

## II.

During the final hearing, the parties did not have an agreement as to the appropriate sentence for Defendant's violations. Defense counsel called United States Probation Officer Rachel Leah Beasley and Ms. Carnes to testify. Officer Beasley testified that she has supervised Defendant since his release from Dismas Charities on November 4, 2021. Rec. at 10:50-11:00. Defendant met with Officer Beasley on the day of his release to be drug tested and went to Cleveland Clinic for surgery a few days later. *Id.* at 11:25-11:11:36. Officer Beasley stated that Defendant tested positive for THC via instant test around December 6, 2021. However, Defendant's vape was sent to a laboratory for testing, which yielded negative results for THC. *Id.* at 11:42-11:54. Officer Beasley stated that she did not reprimand Defendant at that time, other than directing him to not use the vape until the laboratory testing was concluded. *Id.* at

3

12:06-12:15.  Officer Beasley stated that she also met with Defendant in January of 2022, and that Defendant was drug tested each time that she met with him.  *Id.* at 12:51-13:11.

Officer Beasley testified that she was aware of Defendant's medical issues and that, until February 28, she was not concerned that he was concealing anything.  *Id.* at 13:20-14:10.  However, Officer Beasley also stated that she was not aware that Defendant was given morphine, hydrocodone, or any other controlled substances while being treated at Cleveland Clinic.  *Id.* at 14:24-14:52.  As to substance abuse treatment, Officer Beasley testified that Defendant had been receiving medication-assisted treatment for suboxone twice a month before he left Dismas Charities and that he continued the treatment upon his release.  *Id.* at 14:53-15:19.

As to the events of February 28, Officer Beasley testified that Officer Markwell accompanied her to visit Defendant.  *Id.* at 15:45-16:01.  Officer Beasley further testified that Officer Markwell saw the drug paraphernalia and box cutter in the vehicle.  *Id.* at 16:02-16:16:21.  Officer Beasley testified that Officer Markwell stepped away to call local police but was otherwise present for the entirety of the visit.  *Id.* at 16:22-16:29.  Based on concerning comments Defendant made during the visit, Officer Beasley strongly recommended that he go to the Trillium Center.  *Id.* at 16:30-16:47.  Officer Beasley testified that, when she asked Defendant how he felt about inpatient treatment, he stated that he would run away.  *Id.* at 16:48-17:08.  However, Officer Beasley indicated that Defendant expressed interested in outpatient treatment, but she told him that was not an option.  *Id.* at 17:05-17:12.  After Defendant was released from the Trillium Center, he voluntarily enrolled in an intensive outpatient program ("IOP") at Baptist Health in Corbin.  *Id.* at 17:23-17:42.  Officer Beasley stated that she was contacted by a case worker at the hospital who explained that the program treats mental health and substance abuse.  *Id.* at 17:42-18:04.  Officer Beasley testified that she did not tell Defendant

4

that she would recommend that his supervision not be revoked if he completed an IOP. *Id.* at 18:05-18:23.

Officer Beasley stated that she left a voicemail with the psychiatrist and e-mailed the counselor at the Baptist Health IOP but has not received a response. *Id.* at 18:27-18:39. Officer Beasley testified that she is not certain whether Defendant left the IOP voluntarily or if he was arrested while still enrolled there. *Id.* at 18:40-18:52. Officer Beasley stated that, overall, Defendant was generally cooperative and always submitted to drug screens while on supervised release. *Id.* at 19:22-19:49. Officer Beasley testified that Defendant did not express interest in additional treatment and that, prior to February 28, she did not think additional treatment was necessary. *Id.* at 20:25-21:00.

The Court also questioned Officer Beasley further about the Baptist Health IOP program. Officer Beasley testified that Defendant missed a day or two of classes due to a medical appointment and was arrested before completing the program. *Id.* at 21:20-21:21:34. Officer Beasley also testified that the IOP was not residential. *Id.* at 21:35-21:41. Defense counsel then asked Officer Beasley if she knew whether Defendant had completed any drug rehabilitation programs while in BOP custody, to which she indicated that she did not recall. *Id.* at 21:49-22:15. The government confirmed that Defendant told Officer Beasley that he would run away if ordered to participate in inpatient drug treatment. *Id.* at 22:20-22:40.

The defense then called Barbara Carnes. Ms. Carnes testified that she drove Defendant to Cleveland Clinic when he was released in November 2021. Rec. at 24:10-24:16. Ms. Carnes stated that Defendant had three intestinal blockages for several months prior to his release, which caused him to suffer extreme pain. *Id.* 24:17-25:02. Ms. Carnes testified that Defendant was able to visit a doctor while at Dismas Charities, but that a colonoscopy could not be performed

5

due to the severity of the blockages. *Id.* Ms. Carnes also stated that the USPO was notified that she and Defendant were going to the Cleveland Clinic following his release from Dismas Charities. *Id.* at 25:04-26:05.

Ms. Carnes testified that Defendant has suffered from Crohn's disease for about twenty years. *Id.* at 26:20-26:35. She explained that, when active, the disease causes intestinal bleeding, extreme pain, weight loss, and an inability to eat. *Id.* at 26:35-27:01. Ms. Carnes testified that Defendant had been in remission until three or four years ago. *Id.* at 27:15-27:19. Ms. Carnes stated that Defendant was previously rushed to the hospital due to his iron count being almost nonexistent from bleeding. *Id.* at 27:45-27:52. While not in remission, Ms. Carnes explained that Defendant is difficult to deal with medically due to the necessary medications and infusions, port in his chest that is now blocked, and damage to his veins from drug abuse. *Id.* at 27:53-28:21.

Ms. Carnes testified that Defendant underwent surgery in November 2021 to fix the three intestinal blockages and attach an ileostomy bag to his side, which was later removed shortly before his arrest. *Id.* at 28:21-29:23. Ms. Carnes testified that she was present when Defendant called and left a message with the IOP about the procedure to remove the ileostomy bag. *Id.* at 29:24-30:02. Ms. Carnes stated that the IOP expelled Defendant from the program because he missed classes due to his procedure. *Id.* at 29:54-30:02. Ms. Carnes indicated that, prior to the removal surgery, stitches around Defendant's ileostomy bag had come loose, causing a stoma. *Id.* at 30:12-30:34. This caused issues with the bag's attachment, which, in turn, caused feces to "go everywhere" numerous times, which was frustrating for Defendant. *Id.* at 30:30-31:03. Ms. Carnes testified that Defendant's drug relapse occurred during the time he was struggling with his ileostomy bag. *Id.* at 31:42-32:15.

As to his drug abuse history, Ms. Carnes testified that, to her knowledge, Defendant's drug problems began at the age of fourteen with his marijuana use. *Id.* at 32:16-32:32. She also testified that she does not know the extent of Defendant's addiction, but that he is "a bad drug addict." *Id.* at 32:32-32:38. Ms. Carnes stated that Defendant dropped out of the BOP's G.E.D. program, which may have been due to his learning disability. *Id.* 32:55-33:15. She also testified that Defendant did not receive any drug abuse treatment while in BOP custody. *Id.* at 33:17-33:24. Ms. Carnes stated that she sent Defendant to Louisiana for inpatient drug treatment for one month when he was eighteen years old. *Id.* at 33:25-33:50. Ms. Carnes believes Defendant has "dabbled" in cocaine and oxycontin. *Id.* at 33:51-34:30.

As to the events of February 28, Ms. Carnes stated that she stood at the door of her home during some of the conversation between Officers Beasley and Markwell and Defendant. *Id.* at 34:55-35:15. Ms. Carnes stated that she was asked to drive Defendant to the Trillium Center and, when he was discharged, took him to the IOP. *Id.* at 35:23-36:13. Ms. Carnes did not recall overhearing Officer Beasley say that she would contact the Court to ensure Defendant received help or otherwise indicate that he would not be revoked if he completed an IOP. *Id.* at 36:40-37:22. Ms. Carnes testified that, going forward, Defendant needs a gastroenterologist and consistent medication to treat his conditions. *Id.* at 37:59-38:35. Ms. Carnes believes that Defendant did not receive sufficient care while in BOP custody, but that he received better care at FMC Lexington. *Id.* at 38:36-40:03. Ms. Carnes expressed hope that drug rehabilitation will be helpful and fears Defendant will die without it or proper medical treatment. *Id.* at 41:00-42:01.

### III.

The government recommended a sentence of twenty-one months of imprisonment followed by fifteen months of supervised release. The government also requested that the Court recommend that Defendant be designated to a medical facility and undergo a medical screening during any term of incarceration. The government stated that this being Defendant's first set of violations, his candor with the probation officers on February 28, and his stipulation to the violations are all mitigating factors. The government highlighted that Defendant was using methamphetamine at the time of the underlying offense and while on supervision. The government argued that the original offense and current violations are further tethered by both occurring at his mother's home where Defendant resides.

The government also noted that Defendant's criminal history is riddled with convictions, including drug trafficking. As to the need for treatment, the government indicated that, while Defendant may need help to overcome his addiction, his bond report indicates that he has received extensive treatment in the past. Still, the government noted, its recommended term of supervision will allow for further treatment. The government also argued that the need to protect the public and the breach of the Court's trust are significant given that Defendant had been using methamphetamine for several days, a box cutter was present, and he was in a vehicle at the time of the violations.

Defense counsel essentially argued for nor more incarceration and did not have a recommendation as to the term of incarceration, but requested that Defendant be placed in a medical facility if one was imposed. Defense counsel recommended that Defendant be placed on supervised release for up to three years, during which he should be required to complete six months of inpatient treatment, followed by an IOP. Defense counsel argued that Defendant has

not been given the help that he needs to overcome his addiction and that further imprisonment without medical and substance abuse treatment will not benefit him. Counsel also argued that, without inpatient treatment, Defendant's medical conditions may prevent him from overcoming his addiction. Counsel stated that Defendant started using methamphetamine again to avoid eating, and, thus, to avoid using the bathroom due to his ileostomy bag issues.

Defendant directly addressed the Court. Defendant stated that his mental health deteriorated while he had issues with his ileostomy bag and that, although irrational, he turned to methamphetamine as a coping mechanism. Defendant also stated that his addiction started when he was prescribed opiates to treat his Crohn's disease. Defendant indicated that he eventually turned to methamphetamine in order to stop using opiates. However, Defendant stated that his prior rehabilitation was to address his opiate addiction and that he has not received treatment for his methamphetamine addiction. Defendant requested treatment, regardless of the length, and indicated his desire to overcome his addiction and to become an upstanding member of the community.

### IV.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was convicted of the Class C felony of being a felon in possession of a firearm. *See* 18 U.S.C. §§ 922(g); 18 U.S.C. § 3559(a)(3). For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-*

*Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007) ("[T]he policy statements found in Chapter Seven of the United States Sentencing Guidelines . . . 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).  Under section 7B1.1, Defendant's admitted conduct qualifies as Grade C violations with respect to Violations #1 and #3 and a Grade B violation with respect to Violation #2.  Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and a Grade B violation, Defendant's Range under the Revocation Table of Chapter 7 is twenty-one to twenty-seven months.  U.S.S.G. § 7B1.4(a); *see* U.S.S.G. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").  However, because of the statutory maximum imposed by 18 U.S.C. § 3583(e)(3) for imprisonment when the underlying offense of conviction is a Class C felony, the range effectively becomes twenty-one to twenty-four months. Both parties agreed to this calculation of the range.

A Court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation.  *See* 18 U.S.C. § 3583(b) & (h).  The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h).  Defendant's maximum supervised release term for his Class C felony is thirty-six months, less any term of imprisonment imposed upon revocation, including prior revocation terms.  *See United States v. Brown*, 639 F.3d 735, 738 (6th Cir. 2011) (holding that § 3583(h) requires aggregation of any periods of incarceration imposed upon multiple revocations).

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000) (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Defendant did not request or argue in favor of this exception and the record does not support its application, particularly since the evidence is undisputed that Defendant told Officer Beasley he would "run away" if placed in inpatient treatment.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

**V.**

The Court has evaluated the entire record, the Report, all accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all of the section 3553 factors imported into the section 3583(e) analysis.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). The underlying offense is serious and involved Defendant possessing a firearm as a convicted felon, while he was on home arrest for a separate state charge for manufacturing methamphetamine.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. The Court is deeply sympathetic to Defendant's medical conditions. However, Defendant's substance abuse history is extreme and his prior resistance to inpatient treatment, even if driven by stressors or his addiction, is troubling. Based on the nature of Crohn's disease alone, Defendant will encounter additional, if not more severe, stressors throughout his life. Nonetheless, the Court will not tolerate Defendant abusing controlled substances as a coping mechanism. Further, Defendant's use and possession of methamphetamine while on supervised release promotes drug trafficking and poses the risk of returning to criminal conduct, which is dangerous to the public.

As to the need to provide education, training, or treatment, Defendant needs treatment to overcome his extensive addiction. Thus, the Court will recommend that Defendant complete six months of inpatient treatment at the beginning of his term of supervised release.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant's present breach of trust is significant due to the extent and circumstances surrounding his methamphetamine use. However, his acceptance of responsibility and candor with his probation officer mitigate the breach to a certain extent.

The Court must also consider the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends an incarceration term of eighteen months. This is below the Guidelines Range of

12

twenty-one to twenty-four months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, a below-Guidelines sentence is appropriate. Defendant's criminal history is lengthy and requires a period of incarceration. However, Defendant was honest with his probation officer about his relapse and methamphetamine use and accepted responsibility for the violations. The Court seeks to encourage further honesty through its slight deviation below the Guidelines Range. Nevertheless, the undersigned cautioned Defendant that further violations will result in a recommendation for a lengthy term of incarceration. Thus, the undersigned finds a period of incarceration of eighteen months appropriate under the circumstances.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violations. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction carries a maximum supervised release term of three years as a starting point, reduced by any revocation term of imprisonment. *See United States v. Brown*, 639 F.3d 735, 738 (6th Cir. 2011) (holding that § 3583(h) requires aggregation of any periods of incarceration imposed upon multiple revocations). This is Defendant's first revocation. If the Court imposes the recommended imprisonment term, an additional term of eighteen months of supervised release may be re-imposed. Thus, the undersigned recommends an additional term of eighteen months of supervised release, with the additional special condition

that Defendant be required to complete six months of inpatient treatment at the beginning of the term of supervision.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That Defendant be found guilty of the violations;

2. Revocation with a term of eighteen months; and

3. Eighteen months of supervised release to follow, under the same conditions previously imposed, with the additional special conditions that:

   a. Defendant attend and successfully complete a six-month inpatient substance abuse treatment program or, if such a program for that time period is not available, for a period of time that the probation officer deems sufficient, and

   b. Defendant receive a medical evaluation and be designated to the facility nearest his home, for which he qualifies.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended disposition, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk.

Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 20th day of April, 2022.

Signed By:
Hanly A. Ingram
United States Magistrate Judge