UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES TRAVIS CARNES, )<br>)<br>Defendant. ) | Crim. No. 6:15-cr-00024-GFVT-HAI<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

*** *** *** ***

This matter is before the Court on the Report and Recommendation filed by United States Magistrate Judge Hanly A. Ingram. [R. 66.] For the reasons that follow, Judge Ingram's Report and Recommendation will be ADOPTED.

**I**

Defendant James Travis Carnes has been charged with violating the conditions of his supervised release. [R. 56.] On June 6, 2016, this Court sentenced Mr. Carnes to eighty-four months in prison to be followed by three years of supervised released after Mr. Carnes pleaded guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [R. 50.] Mr. Carnes was released from custody and began his term of supervision on November 4, 2021.

The USPO issued the Supervised Release Violation Report on March 2, 2022, that initiated these proceedings. [R. 66 at 2.] The Report contains three alleged violations stemming from an encounter outside Mr. Carnes' mother's house, which is where Mr. Carnes was living. Per the violation report, Mr. Carnes' probation officer and another officer conducted a home visit at Mr. Carnes' reported address and found Mr. Carnes sitting in the driver's seat of a running

vehicle. *Id.* The officer asked Mr. Carnes to exit the vehicle, and when he did so, the cap to a syringe and a cotton pad fell to the ground. *Id.* Mr. Carnes admitted following questioning that he had started using methamphetamine intravenously about five days prior and had used methamphetamine as recently as the day before. *Id.* Violation #1 alleges that Mr. Carnes violated the condition prohibiting him from unlawfully using a controlled substance, which is a Grade C violation. *Id.* at 2. Violation #2 alleges that Mr. Carnes violated the condition requiring him not to commit another local, state, or federal crime. *Id.* Given the Sixth Circuit's holding that use is equivalent to possession, Violation #2 is a Grade B violation. *Id.* Violation #3 alleges that Mr. Carnes violated the condition of his supervision prohibiting him from possessing drug paraphernalia, which is a Grace C violation. *Id.*

On March 24, Judge Ingram conducted an initial appearance with Mr. Carnes pursuant to Rule 32.1. [R. 60.] During the hearing, Mr. Carnes knowingly and voluntarily waived his right to a preliminary hearing. *Id.* The United States sought interim detention, and Judge Ingram found that Mr. Carnes failed to carry his burden under 18 U.S.C. § 3143(a). *Id.* Judge Ingram remanded Mr. Carnes to the Custody of the United States Marshal. *Id.*

On April 12, Judge Ingram conducted the final hearing. [R. 65.] Mr. Carnes was afforded all rights to which he was due under Rule 32.1 and 18 U.S.C. § 3583. At the hearing, Mr. Carnes waived a formal hearing and entered a knowing, voluntary, and intelligent stipulation to the violations contained in the Report. *Id.* Judge Ingram found Mr. Carnes competent to stipulate to the violations and that it was consistent with the advice of counsel. *Id.* Judge Ingram also found that Mr. Carnes' stipulation permitted him to find that the conduct constituted a Grade B violation under the guidelines. *Id.* (citing U.S.S.G. § 7B1.1(a)(2)).

At the hearing, Counsel for Mr. Carnes called United States Probation Officer Rachel

2

Leah Beasley, Mr. Carnes' supervising probation officer, and Ms. Carnes, Mr. Carnes' mother, to testify. [R. 66 at 3.] Ms. Beasley's testimony addressed her history supervising Mr. Carnes and her general view that Mr. Carnes was generally cooperative while on supervised release apart from the events of February 28. *Id.* at 5. Officer Beasley did testify that when she asked Mr. Carnes following their initial encounter on February 28 how he felt about participating in an inpatient treatment program given his drug addition, he told her that he would run away. *Id.* at 4.

Ms. Carnes, Mr. Carnes' mother, also testified as to Mr. Carnes' history of Crohn's disease. *Id.* at 6. In November 2021, Ms. Carnes testified that her son underwent surgery to fix several intestinal blockages and attach an ileostomy bag, which was removed not long before his arrest. *Id.* Prior to Mr. Carnes' surgery to remote the ileostomy bag, the stitches around the bag started to come loose, which, in turn, caused feces to "go everywhere" on numerous occasions. *Id.* Ms. Carnes testified that her son's drug relapse occurred while he was struggling with his ileostomy bag. *Id.* Ms. Carnes also testified that Mr. Carnes' drug problems began at fourteen with marijuana use, and that Mr. Carnes had "dabbled" in cocaine and oxycontin. *Id.*

At the hearing, the United States recommended a twenty-one-month sentence to be followed by fifteen months of supervised release. *Id.* at 8. Although the United States found Mr. Carnes' candor with the probation officers and stipulation to the violations to be mitigating factors, the United States argued that twenty-one months was appropriate given the methamphetamine use both at the time of his underlying offense and during supervision. *Id.* Counsel for Mr. Carnes did not recommend a specific term of incarceration but asked that if incarceration was imposed, that Mr. Carnes be placed at a medical facility. *Id.* Counsel for Mr. Carnes also recommended a term of supervision for up to three years, including a period of at least six months of inpatient drug treatment. *Id.* Mr. Carnes addressed the Court and said that

3

his mental health had deteriorated when he was having issues with the ileostomy bag, and he had turned to methamphetamine as a coping mechanism. *Id.* at 9. Mr. Carnes indicated that while he was previously treated for his opiate addiction, he had never received treatment for his methamphetamine addition, and it was his desire to receive treatment and become an upstanding member of society. *Id.*

## II

After the hearing, Judge Ingram carefully reviewed the entire record, including the Violation Report and all accompanying documents, and the underlying Judgment and sentencing materials. Judge Ingram also considered the factors set forth in 18 U.S.C. § 3553, as incorporated in § 3583(e). Section 3583(e)(3) provides that the maximum penalty for a supervised release violation hinges on the severity of the underlying offense of conviction, which in this case was a Class C felony for being a felon in possession of a firearm. [R. 50.] For a Class C felony, twenty-four months is the maximum revocation sentence pursuant to 18 U.S.C. § 3583(e)(3). Although Mr. Carnes' Guideline range sentence would ordinarily be twenty-one to twenty-seven months given his criminal history category of VI (at the time of his original conviction) and admitted Grade B violation,[1] 18 U.S.C. § 3583(e)(3) instructs that Mr. Carnes' conviction carries a statutory maximum period of incarceration of twenty-four months. [R. 66 at 10.] Mr. Carnes' maximum term of supervision is thirty-six months, less any imprisonment imposed upon revocation. *Id.* Judge Ingram found that under the Guidelines, an established Grade B violation necessitated revocation of Mr. Carnes' term of supervision. *Id.* at 11 (citing USSG § 7B1.3(a)(1)).

---

[1] "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." U.S.S.G. § 7B1.1(b).

In determining the appropriate revocation term of imprisonment, Judge Ingram considered all the statutory factors imported into the § 3583(e) analysis as well as the Guidelines Range. *Id.* at 11–14. Regarding the underlying offense, Judge Ingram noted it was serious because it involved Mr. Carnes' possession of a firearm as a convicted felon while he "was on home arrest for a separate state charge for manufacturing methamphetamine." *Id.* at 11. As to Mr. Carnes' criminal history and personal characteristics, need to deter criminal conduct, and need to protect the public, Judge Ingram noted that while he was "deeply sympathetic to Defendant's medical conditions," Mr. Carnes' "substance abuse history is extreme and his prior resistance to inpatient treatment…is troubling." *Id.* Furthermore, Judge Ingram noted that the Court "could not tolerate" the abuse of controlled substances, and that Mr. Carnes' use and possession of methamphetamine while serving his term of supervision promoted drug trafficking, posed a risk of returning to criminal conduct, and was dangerous to the public. *Id.* at 12.

As for the need to provide education, training, or treatment, Judge Ingram noted that because Mr. Carnes does need treatment "to overcome his extensive addiction," he would recommend that Mr. Carnes complete six months of inpatient treatment at the beginning of his term of supervision. *Id.* Judge Ingram also found that the primary wrong in this case was Mr. Carnes' breach of trust, though he did note that Mr. Carnes' acceptance of responsibility and candor with his probation officer mitigated this breach "to a certain extent." *Id.*

Generally, the need to avoid unwarranted sentencing disparities factor is addressed by imposing a Guideline sentence. Here, however, Judge Ingram recommends an eighteen-month sentence, which is below the Guideline Range of twenty-one to twenty-four months. *Id.* at 12–13. As required, Judge Ingram provided the specific reason for providing a sentence below the Guidelines Range, which he stated was Mr. Carnes' honestly and candor with his probation

5

officer about his drug relapse and acceptance of responsibility. *Id.* at 13. Judge Ingram noted that he sought to encourage further honestly through a slight deviation from the Guidelines. *Id.* However, should Mr. Carnes violate his Supervision again, Judge Ingram noted that would "result in a recommendation for a lengthy term of incarceration." *Id.*

Because this is Mr. Carnes' first revocation and his underlying conviction carries a maximum supervised release term of three years, Judge Ingram noted that he could recommend the imposition of an eighteen-month term of imprisonment and an eighteen-month term of supervision. *Id.* at 13. Ultimately, Judge Ingram made the following recommendations: (1) Mr. Carnes be found guilty of all violations contained in the Report; (2) Mr. Carnes' term of supervision be revoked; (3) Mr. Carnes serve an eighteen-month term of imprisonment; (4) Mr. Carnes serve an eighteen-month term of supervision with the following special conditions:

   a. Mr. Carnes attend and successfully complete a six-month inpatient substance abuse treatment program or, if such a program for that time period is not available, for a period of time that the probation officer deems sufficient, and

   b. Mr. Carnes receive a medical evaluation and be designated to the facility nearest to his home, for which he qualifies.

*Id.* at 14.

Judge Ingram's Report and Recommendation advised the parties that objections must be filed within fourteen (14) days of service. *Id.* at 14; *see* 28 U.S.C. § 636(b)(1). The Report and Recommendation also provides the parties with the consequences of failing to object within the provided timeframe. *Id.*; *see Thomas v. Arn*, 474 U.S. 140 (1985). On May 2, 2022, Mr. Carnes objected to Judge Ingram's Recommended Disposition. [R. 67.] Although Mr. Carnes admits

that he committed the violations contained in the violation report, he objects to Judge Ingram's "recommended outcome." *Id.* at 67.

On May 19, the Court held an allocution hearing with Mr. Carnes. At the hearing, Counsel for the United States argued that while he originally sought a twenty-one-month sentence with fifteen months of supervision, he did not object to Judge Ingram's below-Guideline eighteen-month sentence followed by eighteen months of supervision. Counsel for the United States reiterated his concerns with drug abuse that tethered Mr. Carnes' underlying offense with his supervised release violation.

Counsel for Mr. Carnes made it clear that Mr. Carnes was not contesting his guilt or seeking to withdraw the stipulation to the violations contained in the Violation Report that he made during his final hearing before Judge Ingram. He simply wanted to note for the record that he objected to the length of the sentence Judge Ingram was recommending. Counsel argued that the issue here is drug addiction, and that issue would be more effectively addressed through lengthy drug treatment instead of incarceration. Mr. Carnes also spoke on his own behalf and stated that if there was any way he could have an alternative to prison, it would be better for him. In addition, he expressed concerns that his mother's health was deteriorating following a recent stroke, and he is her primary caregiver.

After review, although the nature of the violation is concerning, the Court finds that a slight downward variance from the Guidelines to eighteen months, as recommended by Judge Ingram, is appropriate in this case. At the hearing, Mr. Carnes acknowledged the wrongfulness of his actions and took responsibility for violating the terms of his supervised release. While the Court is sympathetic to Mr. Carnes' desire to avoid prison, particularly given his health concerns and ailing mother, Mr. Carnes committed a serious violation of the Court's trust through the use

and possession of methamphetamine while serving his term of supervision. These actions, as Judge Ingram noted, promote drug trafficking, pose a risk of returning to criminal conduct, and are dangerous to the public. Therefore, the Court finds that an eighteen-month sentence would reflect the seriousness of the offense, protect the public, and provide just punishment for the offense while allowing Mr. Carnes the chance to begin an inpatient drug treatment program more quickly and also return to his ailing mother more quickly, which will be beneficial for Mr. Carnes.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Report and Recommendation made as to Defendant James Travis Carnes **[R. 66]** is **ADOPTED** as and for the opinion of the Court;
2. Mr. Carnes is found **GUILTY** of the violations contained in the Report;
3. Mr. Carnes shall serve a term of imprisonment of eighteen months;
4. Following Mr. Carnes' release, he shall serve an eighteen-month term of supervision under the same conditions previously imposed with the following additional special conditions;
    a. Immediately upon the completion of his term of incarceration, Mr. Carnes shall attend and successfully complete a six-month inpatient substance abuse treatment program or, if such a program for that time period is not available, for a period of time that the probation officer deems sufficient,
    b. The Court recommends that Mr. Carnes receive a medical evaluation, and that he be designated to the medical facility nearest to his home for which he

qualifies.

This the 23d day of May, 2022.

Gregory F. Van Tatenhove
United States District Judge